**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

Joseph Daniel Farrera Bolivar,

     Petitioner,

     v.                                 Case No. 2:26-cv-02590-BCL-cgc

Christopher Bullock,
Acting Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

     Respondent.

## ORDER DENYING PETITION UNDER § 2241

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is Christopher Bullock, Acting Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace the "Warden of the Western Tennessee Detention Facility with Christopher Bullock. *See* Fed. R. Civ. P. 25(d). All other Respondents are **DISMISSED**.

Petitioner Joseph Daniel Farrera Bolivar, a noncitizen, filed a petition under 28 U.S.C. § 2241 seeking his release from detention in the custody of Immigration and Customs Enforcement ("ICE") or an individualized bond hearing. Doc. 2. at 1–14. Appended to the end of the Petition was an embedded Motion for Temporary Restraining Order and Preliminary Injunction. *Id.* at 15–21. For the reasons that follow, the Petition and Motion are **DENIED.**

1

## BACKGROUND

Petitioner is a citizen of Venezuela. Doc. 2 at 4. On January 14, 2025, Petitioner applied for admission through a CBPOne appointment at Eagle Pass, Texas. Doc. 9-2 at 2. At the time he applied for admission (January 14, 2025) Petitioner was served with a Notice to Appear which indicated he was "an arriving alien" and ordered him to appear before an immigration judge on September 14, 2026 to show cause why he should not be removed. Doc. 9-1 at 1. That same day, a Customs and Border Patrol Officer determined Petitioner was subject to removal because under Title Eight, United States Code Section 1182(a)(7)(A)(i)(I) "at the time of application for admission," he was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." *Id.* at 4.

On May 15, 2026, Petitioner was arrested for his failure to appear in an Arkansas traffic case from November 17, 2025. Doc. 9-2 at 2. Currently, Petitioner is detained at the West Tennessee Detention Facility in this District. Doc. 2 at 6. Petitioner seeks his release or a bond hearing. *Id.* at 11.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge her detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Temporary restraining orders and preliminary injunctions are "extraordinary equitable remed[ies] that [are] never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain such

relief, the movant must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20). "Thus, '[t]he party seeking a preliminary injunction bears the burden of justifying such relief.'" *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). "If the plaintiff fails to show a likelihood of success on the merits, the court may deny [the motion for a temporary restraining order] without any further consideration." *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)).

## ANALYSIS

To begin, Petitioner's claims fail to the extent they are based on the Administrative Procedure Act ("APA") because 28 U.S.C. § 2241 provides an adequate remedy. Next, Petitioner's failure to exhaust his administrative remedies dooms his statutory claim, which in any event fails on its merits. And Petitioner has not shown that his statutorily mandated detention offends the Due Process Clause of the Fifth Amendment.

### I.    Petitioner's claims under the APA fail because he has an adequate remedy in habeas.

"The judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). Importantly, judicial review of final agency action under the APA is only available when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This limitation ensures that "the APA's general grant of jurisdiction to review agency decisions is not duplicative of more

3

specific statutory procedures for judicial review." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006).

In this case, habeas corpus provides an adequate remedy for Petitioner's claims. *See Singh v. Noem*, No. 2:25-CV-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026); *cf. Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (noncitizens' challenge to confinement and removal under the Alien Enemies Act fell within the "core" of habeas corpus and thus could not be brought under the APA). APA review therefore is inapplicable here, and Petitioner's claims fail to the extent they are based on the APA. For that reason, Petitioner's APA claims are dismissed for failure to state a claim. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016).

**II.    Petitioner's claim challenging application of 8 U.S.C. § 1225.**

**A. Petitioner's failure to exhaust his administrative remedy precludes relief on his statutory claim.**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted); *see also Smith v. United States Sec. & Exch. Comm'n*, 171 F.4th 798, 811 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation.").

4

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency *can* provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith*, 171 F.4th at 810 (emphasis added).[1] And, here, there is no indication that Petitioner sought relief with the immigration judge and Board of Immigration Appeals ("BIA") before filing this petition. If Petitioner is correct on his statutory claim, he has deprived the Executive Branch of "the opportunity to correct its own mistakes" and "produce a useful record for subsequent judicial consideration." *See Woodford*, 548 U.S. at 89. Petitioner's statutory claim is thus barred by the exhaustion doctrine and must be rejected for that reason alone.

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Even if it were not barred by the exhaustion doctrine, Petitioner's statutory claim fails on the merits. Like many recent cases, the statutory claim in this case turns on whether Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). Section 1226(a) provides that an "alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," but that the alien "may" be "release[d] on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). The other provision, Section 1225(b)(2)(A), provides for mandatory detention:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 171 F.4th at 808 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) further instructs:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

Section 1225(b)(2)(A)'s mandatory detention provision controls. The Court is not writing on a blank slate: The Sixth Circuit recently addressed the meaning of Section 1225(b)(2)(A), and its interplay with Section 1226(a), in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). In *Lopez-Campos*, the Sixth Circuit held that, despite the broad language of Section 1225(b)(2)(A), Section 1226(a)'s permissive detention provision applies to an alien "detained within the interior of the United States who never affirmatively applied for admission" (as contrasted with merely opposing removal). *Id.* at 721. The Sixth Circuit reasoned that "[n]oncitizens . . . who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry[ ] are not 'seeking admission'" under Section 1225. *Id.* at 723. The undersigned reached the opposite conclusion in a string of decisions arising in similar contexts, but the Court must and will faithfully follow the decisions of the Sixth Circuit unless and until they are overruled, because "vertical stare decisis is absolute." *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring in part).

Applying the holding of *Lopez-Campos* here, Petitioner is subject to mandatory detention under Section 1225(b)(2)(A). While Petitioner was eventually detained in the interior of the nation, his initial encounter with United States officials came when he first crossed into the United States—that is, when he "arrive[d] in the United States," as reflected in his immigration file deeming him an "arriving alien." 8 U.S.C. § 1225(a)(1). Petitioner applied for admission, Doc. 9-1 at 1, and the immigration officer determined he was "not clearly and beyond a doubt entitled to

be admitted." 8 U.S.C. § 1225(b)(2)(A). Petitioner thus is an "applicant for admission" who is "seeking admission" and thus subject to mandatory detention. The passage of time does nothing to change that: Petitioner has not withdrawn his application for admission (or somehow ceased seeking admission in another way) and conceded removability; he is still actively seeking admission and indeed applied for asylum. Doc. 2 at 5. Nor does it matter that Petitioner was "paroled into the United States," purportedly under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 9. Even if true, the very statute Petitioner cites confirms not only that parole is not admission but also that it does not permanently displace the other governing provisions, including Section 1225(b)(2)(A):

> [S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and shall thereafter continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Indeed, the very fact of parole confirms that Petitioner remains an "applicant for admission" as defined in the statute, as the cited parole provision applies only to aliens applying for admission and, relatedly, that he continues to seek admission as the proceedings he initiated with his entry and presentation at the border will "continue to be dealt with in the same manner." *Id.*

Petitioner thus falls without *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of "applicants for admission" subject to mandatory detention under Section 1225(b)(2)(A).

### III. Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

The exhaustion doctrine does not bar review of Petitioner's constitutional claim because the BIA cannot adjudicate it. *See Smith*, 171 F.4th at 810; *Bangura*, 434 F.3d at 494 (citations omitted). But Petitioner's constitutional claim fails on the merits.

Petitioner argues that because he was paroled, the government has arbitrarily and capriciously revoked his parole in violation of the Due Process Clause. Doc. 2 at 10. Here again, the Court is bound to faithfully adhere to *Lopez-Campos*, where (in the context of addressing detention deemed to fall under Section 1226(a)) the Sixth Circuit held that: (1) despite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the entry fiction "does not control" when an alien has "resided within the United States for years," and (2) "the Due Process Clause requires an individualized bond hearing" where "immigration detention becomes needlessly prolonged and appears no longer to effectuate the regulatory goals of civil immigration detention." *Lopez-Campos*, 175 F.4th at 732–33. Accepting those holdings, and making the highly questionable assumption that Petitioner's roughly one year residing in the interior of the nation while on parole takes him outside of *Thuraissigiam* even under the Sixth Circuit's understanding of that decision, Petitioner still has not shown a violation of due process. The Sixth Circuit in *Lopez-Campos* explicitly held that the calculus is different where—as here—Congress has specifically called for mandatory detention. *See* 175 F.4th at 734 ("*Demore* [*v. Kim*, 538 U.S. 510 (2003)] . . . concluded that mandatory detention under Section 1226(c) without an initial individualized bond determination did not violate a noncitizen's procedural due process rights."). And even if the Due Process Clause did impose a time limit on detention without a bond hearing pursuant to a mandatory detention statute, Petitioner has not identified any binding authority establishing, or even made any argument supporting the proposition that his less than one month's detention would fall on the unconstitutional side of the line. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *cf. Zadvydas*, 533 U.S. at 701 (in context of statute allowing discretionary detention pending removal, holding as matter of constitutional

avoidance that six months' detention is presumptively unreasonable if there appears to be no likelihood alien will actually be removed). Absent argument and authority supporting that surprising result, this Court has no authority to impose it on the political branches. Petitioner's constitutional argument therefore fails as well.

In sum, neither the APA, the governing statutes, nor the Constitution guarantee Petitioner release or an individualized bond hearing in connection with removal proceedings. Those claims therefore do not support the Petition or the Motion.

**CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order (Doc. 2) is **DENIED.** The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 9th day of June, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE